```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE


Chad Evans,
     Petitioner

v.                              No. _____

Richard M. Gerry,
Warden, New Hampshire State Prison,
     Respondent
```

### PETITION FOR WRIT OF HABEAS CORPUS
### PURSUANT TO 28 U.S.C. §2254

Chad Evans was sentenced by the judge who presided over his jury trial to serve 28 years to life in prison for second degree murder and assault.  Based on a state statute that was not in force at the time he committed the conduct alleged, was indicted, or was brought to trial, the State sought, and received from a panel of superior court judges who reviewed the trial judge's sentence, the Sentence Review Division ("the Division"), a consecutive term of 15 years, thus raising the minimum term of sentence the trial judge imposed from 28 to 43 years.  The New Hampshire Supreme Court affirmed the Division's increase of Evans's sentence, finding no violation of the state and federal constitutional prohibitions against ex post facto laws.

Mr. Evans contends that the decision of the New Hampshire Supreme Court was either contrary to, or an unreasonable application of, clearly established federal law.  He therefore seeks a writ of habeas corpus, and respectfully requests that

this Honorable Court vacate the Division's 15-year increase of the trial court's sentence.

## Parties

1. Chad Evans is an inmate at the New Hampshire State Prison in Concord, New Hampshire. His address is P.O. Box 14, Concord, N.H. 03302-0014.

2. Richard Gerry is the Warden of the New Hampshire State Prison in Concord, New Hampshire. His mailing address is also P.O. Box 14, Concord, N.H. 03302-0014.

## Jurisdiction, Venue and Statute of Limitations

3. This Court has jurisdiction. 28 U.S.C. §2241(a). Venue lies in this Court. 28 U.S.C. §2241(a) & (d). The petition is timely filed. 28 U.S.C. §2244(d)(1)(A).

## Representation by Counsel

4. At trial, Evans was represented by Mark Sisti and Alan Cronheim, Sisti Law Offices, 387 Dover Road, Chichester, N.H. 03258.

5. On appeal, Evans was represented by David M. Rothstein, Appellate Defender Program, Franklin Pierce Law Center, Two White Street, Concord, N.H. 03301.

## Procedural History and Facts Necessary to Decide Petition

6. In 2000, Amanda Bortner and Chad Evans lived together in Rochester, New Hampshire. Amanda had a daughter named Kassidy. Tr. Trans., Vol II at 66, 69. Kassidy died on November 9, 2000,

while under the care of Jefferey Marshall at his home in Kittery, Maine. She was twenty-one months old. Tr. Trans. Vol II at 27, 63, 138. Marshall was babysitting Kassidy that day, and had done so the previous day as well.

   7.  The State contended that Evans inflicted the injuries that killed Kassidy, as well as prior physical abuse that resulted in bruises and fractures. A Strafford County grand jury indicted Evans with second degree murder, and five counts of second degree assault. State v. Evans, 150 N.H. 416, 417, 839 A.2d 9, 11 (2003). In addition, the State brought against Evans a misdemeanor count of simple assault, involving Bortner, and a misdemeanor count of endangering the welfare of a child. Petition of Evans, 154 N.H. 142, 144, 908 A.2d 796, 798 (2006), cert. denied, __ U.S. __, 127 S.Ct. 1888, 167 L.Ed.2d 274 (2007).

   8.  Evans's jury trial on all charges commenced on December 4, 2001. On December 21, 2001, after roughly 10 days of trial and three days of deliberations, the jury convicted Evans of all charges. Petition of Evans, 154 N.H. at 144, 908 A.2d at 799. On April 16, 2002, the trial judge (Nadeau, J.) sentenced Evans to serve 28 years to life in prison on the second degree murder charge, and suspended sentences on the other charges. Id.

   9.  Evans appealed his convictions on the merits to the New Hampshire Supreme Court, which affirmed. Evans, 150 N.H. 416, 839 A.2d 9.

10.  Meanwhile, the State appealed Evans's sentence to the Division pursuant to N.H. R.S.A. 651:58, I, which became effective on January 1, 2002, eleven days after Evans was convicted.  Petition of Evans, 154 N.H. at 144, 908 A.2d at 799.  This statute allowed the State to an seek enhancement of the trial judge's sentence before the Division.  Petition of the State of New Hampshire (Sentence Review Division), 150 N.H. 296, 297, 837 A.2d 291, 292 (2003)("Petition of the State").  Before January 1, 2002, only the defendant could appeal to the Division the sentence imposed by the trial court judge.  Thus, before the amendment, the State could only seek to enhance the defendant's sentence if the defendant himself initiated the sentence review process.

11.  The Division dismissed the State's application for sentence review, ruling that because Evans was not informed at his sentencing hearing that the State could appeal and seek an increased sentence, such review would violate his due process rights.  Petition of Evans, 154 N.H. at 144, 908 A.2d at 799.  The State, by petition for a writ of certiorari, appealed the Division's ruling, and the New Hampshire Supreme Court ruled that the Division lacked the jurisdiction to consider Evans's due process claim.  Id.  As a result, the State's request for sentence review under N.H. R.S.A. 658:58, I was reinstated.

12.  On remand, Evans unsuccessfully sought legal and equitable relief that would have barred the Division from considering the State's request to review Evans's sentence.  Id. By order dated April 26, 2005, the Division increased Evans's sentence by total of fifteen years, thus raising the minimum term of his sentence from 28 to 43 years.  Id.

13.  Evans appealed the Division's order to the New Hampshire Supreme Court, on grounds that its increase of his sentence under R.S.A. 651:58, I  violated his rights under the due process, double jeopardy, and ex post facto clauses of the state and federal constitutions.  Id.  The New Hampshire Supreme Court affirmed the Division's order.  Id. at 144, 908 A.2d at 799.

14.  Subsequently, Evans filed a timely petition for writ of certiorari in the United States Supreme Court, pursuant to 28 U.S.C. §1257(a), in which he raised only the federal constitutional ex post facto claim.  The Court denied the petition.  Evans v. New Hampshire, No. 06-9176, __ U.S. __, 127 S.Ct. 1888, 167 L.Ed.2d 374 (March 26, 2007).

15.  Aside from the petition denied by the Supreme Court last March, Evans has filed no other petitions or writs in the federal courts with regard to the federal ex post facto claim he now pursues.

### **The Division's Increase of Evans's Sentence Violates the Ex Post Facto Clause**

16.  Article I, Section 10 of the United States Constitution provides, in pertinent part, that "[n]o state shall . . . pass any ex post facto law. . . ."  The Division's increase of Evans's sentence, based on a law that did not exist at the time he committed the underlying offenses, violated the ex post facto clause.  This Court should grant Evans's petition for a writ of habeas corpus, and vacate the Division's order.

17.  "[T]wo critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it."  Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1985).  The "disadvantage" occasioned by the new law must "alter[ ] the definition of criminal conduct or increase[ ] the penalty by which a crime is punishable."  California Department of Corrections v. Morales, 514 U.S. 499, 503 n.3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).  Moreover, the law, to violate the ex post facto provision, must pose more than a "speculative, attenuated risk of affecting a prisoner's actual term of confinement. . . .").  Id. at 508-09.

18.  For example, in Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), the Court deemed ex post facto a statute that eliminated gain time credits awarded to inmates

convicted of murder. "[T]he . . . statute did more than simply remove a mechanism that created an opportunity for early release of a class of prisoners whose release was unlikely; rather, it made ineligible for early release a class of persons who were previously eligible – including some, like petitioner, who had already been released." Id. at 446 (emphasis supplied by Lynce Court).

19.  In Garner v. Jones, 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000), a new parole regulation established that inmates serving life sentences, who had been denied parole, could not apply for reconsideration for eight years. The law in effect at the time Jones began serving his sentence allowed him to seek reconsideration every three years. Id. at 247. The Court remanded Jones's ex post facto claim to determine whether the change "created a significant risk of increasing his punishment." Id. at 255.

20.  Federal courts have construed Morales to mean that if the new law has a punitive effect as applied to the inmate, its retrospective application violates the ex post facto clause. See, e.g., Richardson v. Pennsylvania Baord of Parole, 423 F.3d 282, 290 (3rd Cir. 2005)(retroactive application of change in parole regulations may be unconstitutional if practical effect creates significant risk of increased punishment); Glascoe v. Bezy, 421 F.3d 543, 548 (7th Cir. 2005)("[petitioner] must show

-7-

that as applied to his own sentence the new law created a significant risk of increasing his punishment."); 16A Fed. Proc., L.Ed. §41:212 (2007)("to be eligible for habeas corpus relief based on a violation of the Ex Post Facto clause, a petitioner must show both a retroactive change in law or policy and that this change caused [the] individual disadvantage by creating a significant risk of increasing his punishment.").

21. In other words, a law that makes an inmate eligible for parole every five years instead of yearly may be unconstitutionally ex post facto as applied to a non-violent offender who had a compelling case for earlier parole, but not as applied to a convicted serial killer who has no practical chance of ever being paroled. Similarly, if the effect of the change is purely speculative, there can be no ex post facto claim. See, e.g., Snodgrass v. Robinson, – F.3d –, 2008 WL 108789, at 3 (8th Cir. 2008)(holding ex post facto clause inapplicable to changes in statute governing commutation of sentence).

22. In Petition of Evans, the New Hampshire Supreme Court held that N.H. R.S.A. 651:58, I was not ex post facto as applied to Evans. In so ruling, the Court compared the change in this statute to the change Congress made to 18 U.S.C. §3742(e) in 2003. 154 N.H. at 149, 908 A.2d at 802. The federal statute governs the standard to be applied when an appellate court reviews a district court's decision to depart from sentencing

guidelines.  Before 2003, the appellate court afforded "substantial deference" to the district court's decision.  Id.  After 2003, the standard of appellate review was de novo.  Id.  In the face of ex post facto challenges to the application of the new standard, federal circuit courts found no violation because the amendment effected no substantive change.  Id. at 149-50, 908 A.2d at 799-800 (citing cases); see, e.g., United States v. Mallon, 345 F.3d 943, 946 (7th Cir. 2002)("Procedural innovations that don't tinker with substance as a side effect are compatible with the ex post facto clause.")(citations omitted).  The Petition of Evans Court directly analogized the sentence review statute to the federal statute, and determined that "under either statute, a defendant was subject to the same potential punishment at both his original sentencing hearing *and* before the reviewing tribunal. . . .  In a manner akin to the former section 3742(e), RSA 651:58 merely changed *who* made the final sentencing decision, but not the legal standards for that decision."  154 N.H. at 151, 908 A.2d at 804. (Emphasis added by Court).

    23.  Evans does not question the validity of Mallon.  See United States v. Phillips, 356 F.3d 1086, 1099 (9th Cir. 2004)("Procedural changes such as the PROTECT Act's new standard of review do not fall under the purview of the Ex Post Facto Clause."); United States v. Riley, 376 F.3d 1160, 1165 n. 3 (D.C Cir. 2004)(collecting cases that follow Mallon).  He does

question the applicability of the holding to this case. In Mallon, the statutory amendment impaired no substantive right. Id. at 1165 (holding no constitutional violation where change does not take away a substantive right). A different result attaches if an amendment purports to revoke or restrict the availability of a downward sentencing departure, or otherwise "`works to the defendant's detriment.'" United States v. Smith, 311 F.Supp.2d 801, 806 (E.D. Wis. 2004)(quoting United States v. Seacott, 15 F.3d 1380, 1386 (7th Cir. 1994)).

24. A new law that creates a mechanism for the State to increase a sentence, which did not exist at the time of the commission of the underlying criminal conduct, like the statutes discussed in Smith and Garner, cannot be afforded retroactive effect. Before Evans was convicted, the State could not obtain any appellate review of his sentence before the Division. It was not that the right existed, but the standard of review was different – such review was impossible. Thus, also impossible was the prospect that if the defendant was convicted of murder, and received a 28-year sentence from the trial judge, the State could, as it did here, avail itself of a statutory mechanism to increase the defendant's sentence by 15 years.

25. Under these circumstances, a statute that did not exist when Evans was convicted exposed him to a "significant risk of increased punishment." It visited upon Evans the prospect of

serving a greater sentence than he would have faced had he been sentenced before the law took effect, just as surely as if the legislature had changed the possible punishment for murder or assault.[1]

26.  The ruling of the New Hampshire Supreme Court was both contrary to, and an unreasonable application of, United States Supreme Court precedent.  See 28 U.S.C. §2254(d)(1).  "Under the "contrary to" clause [of AEDPA], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides the case differently than this Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The inquiry is "whether a Supreme Court rule – by virtue of . . . its distillation of general federal law precepts into a channeled mode of analysis specifically intended for application to variant factual situations – can fairly be said to require a particular result in a particular case."  Williams v. Rahim, 230 F.3d 421, 425 (1st Cir. 2000).

27.  While Evans is not aware of a Supreme Court case decided on a "set of materially indistinguishable facts," the

---

[1] Indeed, in 2007, the legislature did increase the penalty for the second degree murder of a child to a minimum mandatory sentence of 35 years to life.  N.H. R.S.A. 651:6, I(p) & V.  Had Evans been brought to trial in 2007, he would not be subject to this new provision.  The State, however, was able to achieve the same effect by virtue of the sentence review provision that, likewise, did not exist when Evans was convicted.

Court, in Morales, Lynce and Garner, has established a broader "mode of analysis" of ex post facto claims, the application of which compels a different result than that reached by the state court here. The new sentence review statute is fairly analogous to a parole regulation, which did not exist at the time of sentencing, but which created the "significant risk" that the inmate would serve a longer sentence. Here, the State's ability to get sentence review did not exist at the time Evans was convicted, and the application of the new statute did more than create a "risk" of increased incarceration – Evans actually got an additional 15 years in prison. Under these circumstances, the state court's resolution is contrary to relevant Supreme Court jurisprudence.

28. "Under the `unreasonable application' clause [of AEDPA], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. 1495, 146 L.Ed.2d 389. "We agree with the Second Circuit that some increment of incorrectness beyond error is required . . . . The increment need not be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court. . . ." McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002)(quotation omitted).

29.  Here, the state court unreasonably applied the <u>ex post facto</u> rule to Evans's case.  The court's conclusion that the new statute did no more than change the tribunal that imposed the final sentence is an unreasonable application of <u>Mallon</u>, which in turn had relied on Supreme Court cases explaining the distinction between substantive and procedural amendments.

30.  Because the New Hampshire Supreme Court's ruling violated Evans's federal constitutional rights in a manner that was contrary to, and an unreasonable application of, Supreme Court precedent, this Court should grant his petition for a writ of habeas corpus, and vacate the Division's 15-year increase of Evans's sentence.

WHEREFORE, Mr. Evans respectfully requests that this Honorable Court grant his petition for writ of habeas corpus, and vacate the Division's 15-year increase of the trial judge's sentence.

                            Respectfully submitted,

                            /s/ David M. Rothstein
By_____
   David M. Rothstein #5991
   Deputy Chief Appellate Defender
   Appellate Defender Program
   2 White Street
   Concord, NH  03301
   603) 228-9218
   Email:  drothstein@piercelaw.edu

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing Petition has been emailed to:
1)  N. William Delker, Senior Assistant Attorney General at will.delker@doj.nh.gov
and
2) Richard Gerry, Warden, NH State Prison at dgerry@nhdoc.state.nh.us

this 20th day of March, 2008.

                                                /s/    David M. Rothstein
                                                David M. Rothstein


DATED:    March 20, 2008