UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Chad Evans</u>

    v.                                       Civil No. 08-cv-105-JD
                                              Opinion No. 2010 DNH 094

<u>Warden, New Hampshire</u>
<u>State Prison</u>

O R D E R

      Chad Evans seeks habeas corpus relief, pursuant to 28 U.S.C. § 2254, from his sentence following his conviction in state court on charges of reckless second-degree murder, second-degree assault, and endangering the welfare of a minor.  Evans's minimum sentence was increased following review by the Superior Court Sentence Review Division, requested by the state under the amended version of New Hampshire Revised Statutes Annotated ("RSA") § 651:58, I.  For purposes of habeas review, Evans contends that application of the amended version of RSA 651:58, I, in his case violated the constitutional prohibitions against ex post facto laws, and that the New Hampshire Supreme Court's decision affirming the sentence was both contrary to and an unreasonable application of federal law.

## Background

Evans was convicted on December 21, 2001.  On April 16, 2002, he was sentenced to serve twenty-eight years to life in prison on the second-degree murder charge and received suspended sentences on the assault and endangering charges.  Evans appealed his conviction, which was affirmed.  State v. Evans, 150 N.H. 416 (2003).

The state filed a petition for sentence review under RSA 651:58, I.  The Superior Court Sentence Review Division ("Division") dismissed the petition because Evans was not informed at his sentencing hearing that the state could seek review.  The state appealed that decision, and the New Hampshire Supreme Court held that the Division exceeded its jurisdiction in dismissing the state's petition.  Petition of New Hampshire, 150 N.H. 296, 299 (2003).  On April 26, 2005, in response to the state's petition, the Division added a consecutive sentence of five to ten years for one of the assault convictions and a second consecutive sentence of ten to thirty years on another assault conviction.  Because the additional sentences were consecutive to the sentence of twenty-eight years to life on the second degree murder conviction, Evans's minimum sentence increased from twenty-eight years to forty-three years.

Evans appealed the Division's sentencing decision, contending that application of RSA 651:58, I, violated his rights under the state and federal constitutions to due process, to protection against double jeopardy, and to the prohibition against ex post facto laws. The New Hampshire Supreme Court concluded that the amendment to RSA 651:58, I, "created a procedural change in the statute by altering <u>who</u> made the final sentencing decision, but not the legal standards for that decision . . . [and] did not alter the definition of the underlying offenses, increase the sentencing range for which a defendant was eligible as a result of a conviction, or eliminate any available defenses." <u>Petition of Evans</u>, 154 N.H. 142, 153 (2006). As a result, the supreme court held that application of the amended version of RSA 651:58, I, did not violate the prohibitions against ex post facto laws. <u>Id.</u> The Supreme Court denied Evans's petition for a writ of certiorari. <u>Evans v. New Hampshire</u>, 127 S. Ct. 188 (March 26, 2007). Evans filed his petition under § 2254 in this court on March 20, 2008.

<u>Discussion</u>

Evans contends that the application of RSA 651:58, I, in his case, which resulted in an increase in his minimum sentence, was a violation of the prohibitions against ex post facto laws in the

Federal Constitution because RSA 651:58, I, went into effect eleven days after Evans was convicted. He argues that the New Hampshire Supreme Court's decision that application of RSA 651:58, I, in his case was not an ex post facto law was both contrary to and an unreasonable application of federal law. The Warden moves for summary judgment to deny Evans's petition. Evans moves for summary judgment in his favor.

Summary judgment is commonly used in habeas corpus proceedings. See Fed. R. Civ. P. 81(a)(4); Rule 12, Rules Governing § 2255 Cases. Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Evans and the Warden agree that Evans's petition does not raise factual issues, that the petition presents only a legal issue, and that no hearing is necessary. Cross motions for summary judgment that are based on the factual background of the claims must be considered separately. When only a legal issue is presented, as in this case, the parties have presented their motions as a "case stated." See Am. Lease Ins. Agency Corp v. Balboa Capital Corp., 579 F.3d 34, 39 n.5 (1st Cir. 2009); Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 643 (1st Cir. 2000).

States are prohibited by the Federal Constitution "from enacting laws with certain retroactive effects." Stogner v. California, 539 U.S. 607, 610 (2003).  A challenged law violates the prohibition against ex post facto laws if it applies to conduct that was completed before the law was enacted and raises the penalty above what was previously provided.  Johnson v. United States, 529 U.S. 694, 699 (2000).  A procedural change in a law, which does not change a defendant's substantive rights, does not implicate the ex post facto prohibition, "[e]ven though [the change in the law] may work to the disadvantage of a defendant."  Dobbert v. Florida, 432 U.S. 282, 293 (1977).

In this case, the amendment to RSA 651:58, I, added a provision giving the state the right seek sentence review and became effective on January 1, 2003, after Evans was convicted of the charged crimes but before he was sentenced in April of 2003. For purposes of habeas review, the parties assume that the application of RSA 651:58, I, to Evans was retroactive because the law became effective after Evans was convicted.  The New Hampshire Supreme Court did not expressly decide the retroactivity issue, stating first that it was reviewing whether "the claimed retrospective application of RSA 651:58, I, violated the state and federal constitutional prohibitions against ex post facto laws" and later that because the amendment affected only

procedural rights, it could be applied retrospectively. <u>Evans</u>, 154 N.H. at 800 & 805-06 (emphasis added).

RSA 651:58, I, applies to the sentencing process, allowing the state, as well as a defendant, to seek review of a sentence. It may be arguable that RSA 651:58, I, was not applied retroactively to the sentencing procedure in Evans's case. Because the deferential standard of review applies here, and the state court did not address retroactivity, this court will not address the question of whether the amendment was applied retroactively. <u>See</u> <u>Gray v. Brady</u>, 592 F.3d 296, 300-01 (1st Cir. 2010).

To succeed on a petition under § 2254 challenging the state court's legal conclusions, a petitioner must show that "the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as established by the Supreme Court of the United States.'"[1] <u>Abrante v. St. Amand</u>, 595 F.3d 11, 15 (1st Cir. 2010) (quoting § 2254(d)(1)). "[A] state-court decision is contrary to clearly established

---

[1] The New Hampshire Supreme Court stated that it was deciding the ex post facto issue under the New Hampshire Constitution's prohibitions against ex post facto laws, which were more protective than the Federal Constitution. <u>Evans</u>, 154 N.H. at 148-49. "[W]e infer that the federal claim was considered if the state court rejects a counterpart state claim and then cites to a case holding that the federal constitution provides no greater protection." <u>White v. Coplan</u>, 399 F.3d 18, 23 (1st cir. 2005).

federal law if the state court employs a rule that contradicts an existing Supreme Court precedent or it if reaches a different result on facts materially indistinguishable from those of the controlling Supreme Court precedent." Janosky v. St. Amand, 594 F.3d 39, 47 (1st Cir. 2010). "A state-court decision constitutes an unreasonable application of clearly established federal law if it identifies the correct rule, but applies that rule unreasonably to the facts of the case sub judice." Id.

A. Contrary to Clearly Established Federal Law

Evans concedes that no Supreme Court case presents materially indistinguishable facts. Instead, he argues that the Supreme Court has established an analysis for ex post facto claims that requires a different result from that reached by the New Hampshire Supreme Court. See Williams v. Matesanz, 230 F.3d 421, 425 (1st Cir. 2000) (overruled on other grounds by McCambridge v. Hall, 303 F.3d 24, 37 (1st Cir. 2002)). In particular, Evans argues that when considering an ex post facto claim the Supreme Court examines whether application of the new law created a significant risk that the defendant would be subject to increased punishment. He cites Garner v. Jones, 529 U.S. 244 (2000); Lynce v. Mathis, 519 U.S. 433 (1997), and Cal.

7

Dep't of Corrs. v. Morales, 514, U.S. 499 (1995), along with several lower court decisions, in support of his theory.

Garner and Morales addressed ex post facto challenges to changes in parole rules.  In Garner, the Supreme Court noted the difficulty of evaluating the ex post facto effect of changes in parole rules, limited its analysis to that context, and explained Morales in the same context.  529 U.S. at 250-54.  The change in Florida law considered in Lynce is not analogous to the amendment to RSA 651:58, I, which is at issue in this case.

In Lynce, the Supreme Court considered whether a change in Florida law that cancelled early release credits for certain prisoners violated the Ex Post Facto Clause.  519 U.S. at 435. The petitioner had been released, based on early release credits, and then was rearrested and returned to prison after the new law retroactively cancelled his credits.  Id. at 435-36.  The Court rejected the warden's argument that because the credits were granted only to relieve prison overcrowding, cancellation of the credits did not affect the statutory penalty for the crime.  Id. at 446-47.  Not surprisingly, the Court concluded that the retroactive application of the Florida law, which cancelled the petitioner's credits after he had been released from prison, increased his punishment and violated the prohibition against ex post facto laws.  Id. at 441 & 449.

The Supreme Court recognized that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of [the prohibition against ex post facto laws]." Garner, 529 U.S. at 250 (citing Lynce, 519 U.S. at 445-46). As such, the cases Evans cites involved the ex post facto potential for parole changes, and the Supreme Court was careful to explain the parole rule context of its analysis. Because of the subject matter, those cases differ substantially from Evans's ex post facto challenge to the amended version of RSA 651:58, I.

Evans has not shown that the cited cases provide Supreme Court precedent for an ex post facto analysis in the context of his case. Therefore, Evans has not established that the state court's decision, which relied on a different analysis, is contrary to clearly established federal law as determined by the Supreme Court.

B. Unreasonable Application of Federal Law

Evans also contends that the New Hampshire Supreme Court's decision is based on an unreasonable application of federal law. He contends that the New Hampshire Supreme Court's failure to find a violation of the prohibition against ex post facto laws was an unreasonable application of the ex post facto analysis, as required by the Supreme Court in Garner, Lynce, and Morales.

In Evans's case, the New Hampshire Supreme Court followed the analysis used by the Seventh Circuit in assessing the ex post facto implications of an amendment to the PROTECT ACT, 18 U.S.C. § 3742(e)(4), which changed the appeals court's sentence review from "due deference" to the district court's decision to a de novo standard.[2]  United States v. Mallon, 345 F.3d 943, 945 (7th Cir. 2003).  In Mallon, the district court imposed a sentence below the Guideline range.  The government appealed the sentence, and an issue arose on appeal as to whether deferential review or the new de novo standard would apply.  Id.  The defendant argued that application of the new de novo standard on appeal would violate the ex post facto prohibition because it would alter the consequences of the crime he had committed before the change in the review standard was enacted.[3]  Id. at 946.

In addressing the ex post facto challenge, the Seventh Circuit relied on Dobbert v. Florida, 432 U.S. 282 (1977), and Beazell v. Ohio, 269 U.S. 167 (1925).  Mallon, 345 F.3d at 946-47.  The court noted that the change in the PROTECT ACT did "not

---

[2] The New Hampshire Supreme Court relied on federal law as instructive in the area of ex post facto challenges.  Evans, 154 N.H. at 149.

[3] Specifically, the defendant argued that the change in the review standard effectively meant that instead of a sentence imposed by the judge in his case, his sentence would be imposed by a panel of appellate judges.

change the statutory penalties for crime, affect the calculation of the Guidelines range, or alter the circumstances under which departures are permitted." Id. at 346. Instead, the new law merely "change[d] who within the federal judiciary makes a particular decision, but not the legal standards for that decision." Id. The court concluded that "[p]rocedural innovations that don't tinker with substance as a side effect are compatible with the ex post facto clause." Id.

In Dobbert, between the time the defendant murdered two of his children and the date his trial was scheduled to begin, Florida changed its procedures for imposing the death penalty, from a presumption of the death penalty unless a majority of the jury recommended mercy to a separate sentencing procedure decided by the judge, and if a death sentence was imposed, automatic review by the Florida Supreme Court. 432 U.S. at 288. The defendant argued that the change implicated the prohibition against ex post facto laws because it deprived him of "a substantial right to have the jury determine, without review by the trial judge, whether that penalty should be imposed." Id. at 292. The Supreme Court, in explaining its precedent, stated that the prohibition against ex post facto laws does not limit "'the legislative control of remedies and modes of procedure which do not affect matters of substance.'" Id. at 293 (quoting Beazell

11

v. Ohio, 269 U.S. 167, 171 (1925)).  The Court then explained that the change in the Florida law "simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime."  Id. at 294.  For that reason, the Court concluded that the change was "clearly procedural" and did not offend the prohibition against ex post facto laws.  Id. at 293-94.

Consonant with Supreme Court precedent in Dobbert, as applied by the Seventh Circuit's analysis in Mallon, the New Hampshire Supreme Court determined in Evans's case that RSA 651:58, I, as amended, was a procedural rule pertaining to who makes the final sentencing decision and that it did not affect Evans's substantive rights.  Evans, 154 N.H. at 151.  In other words, the amendment did not change the legal standards for the sentencing decision.  Id.

Evans points out that providing a right of sentence review to the state allowed the state a second chance to advocate for a longer sentence, which often would result in an increase and in his case did result in a longer sentence.  Before the amendment, no such risk existed.  Although the state's petition for review did result in a longer minimum sentence for Evans, he does not dispute that the sentence was still within the range of

punishment that was applicable when he committed the crimes.[4] Id. Therefore, the New Hampshire Supreme Court's decision was not an unreasonable application of federal law.

### Conclusion

For the foregoing reasons, the respondent's motion for summary judgment (document no. 16) is granted.  The petitioner's motion for summary judgment (document no. 22) is denied.  The petition for a writ of habeas corpus (document no. 1) is denied.

Evans may move for a certificate of appealability under 28 U.S.C. § 2253(c), with a supporting memorandum, **on or before June 16, 2010.**  The Warden shall file a response **within ten days after the date the motion is filed.**  See Rule 11, Rules Governing § 2254 Cases.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

June 2, 2010

cc:   David M. Rothstein, Esquire
      Elizabeth C. Woodcock, Esquire

---

[4]In addition, the new version of RSA 651:58, I, was in effect when Evans received his initial sentence with a minimum of twenty-eight years.  Evans is deemed to have had statutory notice then of the change in the law, which gave the state the right to seek review.  Evans, 154 N.H. at 145.  Therefore the law was not changed after he began serving his sentence, as in Garner, Lynce, and Morales.